The next case is 18-807-6, Morgan v. Baker Hughes. Why do I feel like this is deja vu? I was just going to comment. All right. Judge, we are back. Like a bad penny, we keep turning up. The last time that we did this, we were actually up at the University of Wyoming Law School. That's right. The article up there, but let's go. May it please the Court. This case is about the theory of direct negligence under Wyoming law. The Wyoming Supreme Court has frequently explained that theory by contrast to the theory of vicarious liability under respondeat superior. Of course, under respondeat superior, the demonstration has to be a pervasive control, whereas by contrast, for direct negligence, there's a much lesser level of control, but that control has to be directed at the activity that was involved in the plaintiff's, in this case, death. In the prior appeal on the – oh, and let me make clear. So there's two critical dimensions that differentiate direct negligence. One, object of control. What is it that they had to control? Two, level of control. How much control – whoops, better not do that. How much control did they have to exert? Now, in the prior appeal, Judge Lucero, you made the object of control crystal clear, and I quote, To be held liable, a parent must have retained or exercised control over some aspect of the operation of the subsidiary corporation, which was involved in the incident resulting in the plaintiff's injuries. In my objections to the jury charge, I quoted that very sentence that you wrote in the prior opinion, and I said this is the correct formulation of the control question. And, moreover, it was the law of the case. It was the law of the case, and the other thing that we can talk about this later, but there's some conception or some argument, certainly on the other side, of whether independent contractor cases apply to direct negligence when you have a parent subcontext. In this case, Laredo itself, the parent subcase, holds that the test in finding whether the parent assumed an affirmative duty is not whether it operated any control in the mine, but whether the parent controlled the aspect of the mining operation that was involved in the incident that resulted in the plaintiff's injuries to such a degree that it directed how that aspect should or should not be done. I think that makes it very clear that in a parent subcase, it's erroneous to fail to limit the question that the jury has to answer to the proper object, to the object of control, which is the activity in which the plaintiff was engaged at the time that he was killed. Weren't they fully instructed in this regard by instruction number 11, which is what they would have looked to, 10 and 11, I believe, to answer the question? As we have pointed out, and now we're just on object of control, right, because the object of control was correctly stated in the first sentence of the instruction number 11. But importantly, that instruction does not instruct the jury to answer question number one in any other way than as question number one is phrased. What juries do is juries find facts, and to find facts, juries answer questions. And so you have to look at the question, read the question, and answer it. Now, the question doesn't ask about the activity in which David Morgan was involved at the time of his death. The question asks about control over the overall warehouse operations. That's a respondeat superior question. The object of control in question one is respondeat superior. It is not the proper inquiry as Judge Lucero framed it, which is the activity that he was engaged in at the time of his death. Well, questions are going to be answered in the context of the jury instructions as a whole. The verdict form is one part of the jury instructions as a whole, and so that same jury that checked the box on question number one is going to be reading instruction number 11, which is a more fulsome statement of what the law is. And so it's not clear to me why in checking that box they weren't checking the box aware of question number 11, I mean jury instruction number 11. Oh, Your Honor, I'm not saying at all that they weren't aware of question number 11. I'm saying what does question number 11 tell them? Does it tell them to answer question number one other than as it is plainly written? And the answer is no, it doesn't. It doesn't. I guess I'm not really understanding your argument fully then on the verdict form, because I don't understand why the second aspect or the second phrase in the verdict form addresses your concern, which is, you know, they're specifically told that they have to find it to such a degree, the control to such a degree that it directed how forklift safety should or should not be done. Why doesn't that get specific? I mean, they're not, they understand what they're talking about here. And they understand they're talking about forklift safety in this particular setting. Not if they're reading the question as it was written. The question as it was written asked about control of the operations of the warehouse. Now, that subsequent, the subsequent. Warehouse to such a degree that it directed how forklift safety should or should not be done. And that comes to the level of. Part of that is confusing. That comes to the level of control. There's two, as I told you, there's the object of control, and the object of control in that question is the overall operations of the warehouse. The level of control, and this is why I wanted to start out by talking about direct negligence. Direct negligence unquestionably involves a lesser level of control than does respondeat superior. So how do we get to that? Again, we look to what Judge Lucero wrote in the first opinion. And before that. To all due respect, it's the panel speaking. I authored the opinion. And I don't mean to slide to Judge Phillips at all. It's just because you wrote it. That's why I wrote the opinion. That's why I said it that way. But what you wrote as to the level of control is in order for a parent to escape liability. That's critical. In order for a parent to escape liability under this standard, the subsidiary must be entirely free to do the work in its own way. That's the level of control. That shows that it has to be a lesser level of control. That is nowhere in jury instruction 11. It's nowhere in question number 1. And that goes to the objection that I made to the charge. There is no indication in the jury charge. There is this line in line 11, in instruction number 11. The retention or exercise of control over the particular aspect of the subsidiary's operation must have been to such a degree, la, la, la, so that the subsidiary was not entirely free to do the work in its own way. You left out part. Well, I left out the, yeah, I mean, it's a whole sentence here. But I'm just saying I thought you were concerned with that language, particular language. And it's there. It's almost a direct quote. I'm sorry. Well, I guess I'm looking at this page, and they had a nice color-coded page in their brief that sort of showed the Morgan 1 opinion. And it crossed reference over to jury instruction 11, and it had color coding. And it pretty much showed all that language is there in instruction number 11. Except the part that's not there, which is the part that the majority wrote, in order to escape liability. That's what directs you to the level. Now, in my brief, let me kind of go up a level to see if I can explain this, because there's a what, there's a how, and there's a how much. The what is control of the activity that resulted in the man's death. The how, so how do we show that in a direct negligence case? We show it one of two ways. We show it either by they directed how the work should or should not be done, or they assumed an affirmative duty. That's the how question. The how much question, the level of control, and let me back up a little bit and see if I can give you some context for Wyoming law. The first case that adopted Section 414 of the restatement was Jones. And it didn't mention this entirely free language, but it said it does not take a great degree of control to establish direct negligence. Then came Stockwell, which for the first time pulled into entirely free. Then came Laredo, which quotes both. Then came Hoare, which quotes both. And what Hoare makes clear is that the entirely free language goes to the level of control. Directed how the work should or should not be done tells you the how. That's how they're going to exercise the control. But it does not answer the question how much control. Because if it does, it presents the wrong level of control for a direct negligence case. And I explain that somewhat torturously, I think, in the brief, because it by itself directed how the work should or should not be done implies a very high level of control. By itself, not entirely free to do the work your own way implies a much lesser level of control. So the way that you reconcile those is you recognize that directed how the work should or should not be done gives you the how, but it doesn't give you the how much. To modify that to correctly instruct on the law to give you the how much, you have to do something like Judge Lucero did on behalf of the majority by introducing it in order to escape the liability. The subsidiary has to be free to do it entirely their own way. This is also entirely consistent with Hoare, which uses the language that they have retained at least some degree of control. In Laredo, they had to control the actual holding of Laredo. This court finds that Solve America did not exercise control. But because this case is in diversity, the language of the Wyoming Supreme Court is ultimately the most important. I completely agree with that, Your Honor. Under Hoare, doing the analysis that you've done under Hoare, in what way are these instructions contrary to the holding of Hoare? They are contrary to the holding in Hoare because in Hoare, and this goes back to, well, let me return to that in a second. Let me answer your question directly. Hoare very, very clearly follows all the cases that came before it, and it holds, as did Jones, that an owner does not have to retain a great deal of control over the work to be liable for an employee's harm. That was picked up in Stockwell with the comment C language, not entirely free, which then followed through Laredo and then obviously followed into Hoare. And Hoare actually makes it completely explicit. Hoare says, as to the level of control, an owner does not have to retain a great deal of control over the work to be liable for the employee's harm. So the way, in answer to your question, the way that this charge does not comport with Hoare is there's absolutely no indication of the lesser level of control required in a direct negligence case. That is the central concept of the direct negligence cause of action, and that is the precise basis upon which I objected. Now, I'd like to get to a couple of other. One more question, because I just want to make sure. So you're really focusing in then on this, in order for a parent to escape liability under this standard, because that sentence isn't there. Is that what you're saying? That's where I'm saying the majority opinion and the priority. It takes the reverse of that, but it's the same concept. For a parent corporation to be liable, dot, dot, dot. And then it says, so that the subsidiary was not entirely free to do the work its own way. It's the same thing. I'm struggling with the distinction here. And I appreciate that, and so let me try again. What is the control? The directed how is the how-to. That's how you show the control, but it doesn't answer how much, because if you use directed how the work should or should not be done to tell you how much, you get the standard wrong. You don't show the lesser degree. You can only show the lesser degree of control by emphasizing that not entirely free modifies directed how it should be done. There's the what, there's the how, there's the how much. A couple of other points that I would like to make sure that I get out, if I could. One, the standard review point. Normally, the standard of review for refusing to give an instruction is abuse of discretion. And, of course, we all know that. In this case, I tendered an instruction, but the way that arises is you have a jury charge that's otherwise legally correct, and one of the parties says, but you need to give this additional instruction. That's the context in which abuse of discretion comes into play. But it's very clear, I hope, that in this case what I was saying is, look, this is wrong. There is no level of control in this jury instruction. You're missing the entire concept that sets direct negligence apart. And so the whole argument was about the legally incorrectness of that. And then at the end of the conference, Judge Scavidal said, well, do you want to tender an instruction? That may be helpful. That's when I tendered the instruction. So the standard of review for the jury charge is de novo. I've got 30 seconds left, and in that 30 seconds you take is reserved. Sir? Reserved? Is that what you were wanting to do? I have a point I need to make, but we'll do it in the rebuttal. We'll do that in the rebuttal. Thanks. May it please the Court, good morning. I'm Steve Laitinen for Baker Hughes. My colleague, Steve Emory, is here with me today. It is a privilege to be here. This case is really about page 15 of our brief. Counsel, will you move the microphone away just a touch because you're popping up. Yes, Your Honor. I'm sorry. Be sensitive to that. Yes, I will. Thank you. Thank you. This case is really about page 15 of our brief in which we color-coded the opinion in Morgan I, which set forth the law of Laredo, and compared that to Judge Scavidal's jury instruction number 11. And, in our view, they match up. One thing that's confusing to Baker Hughes in this case is that, in listening to my esteemed colleague's argument in this case, what he is saying in the briefs is not what they presented to the district court. And, in our supplemental appendix, we provided the special verdict form that the plaintiffs provided, and the special verdict form that the plaintiffs presented to Judge Scavidal was, and this is the appellate supplemental appendix of 233, did Baker Hughes retain or exercise control over any part of forklift safety operations at the Casper Warehouse in question? It appears to us that's not what they're arguing today. When we look at their proposed jury instruction, again, in our view, it's inconsistent. The proposed jury instruction that they proposed to Judge Scavidal really contained the comment A of Section 414, which talks about control over any part of the work done, and we don't see any language in there regarding this escaping liability that my opponent raised. So, in our view, Judge Scavidal properly followed Morgan 1, and he did instruct the jury properly as to the law, and the special verdict form was also correct. In terms of the standard of review, in our view, the judge's decision not to use the plaintiff's instruction is an abuse of discretion standard. This court will review all of the instructions de novo to make sure that they do state the law correctly and that they inform the jury as to the governing law on the parent subsidiary issue. So he still gets a de novo review at some level anyway, right? That's true, Judge. Yes, that's true. We think an important decision that supports our view that this was the law of the case is a recent decision by Your Honor Judge Holmes, the Kockens v. Teleflex case, which is a 2010 case, in which the panel there wrote that when we have a decision by this circuit on the law, for state law in a diversity case, those rulings will be binding upon all the district courts of that state, but they'll also be binding on any subsequent panels. We think that case is important. Another case authored by His Honor Judge Lucero, is the McComber v. American Family case from 2018, in which the issue was whether the jury instruction standard, which was mirrored in a Supreme Court case, constituted reversible error. That decision, we believe, would be analogous here, in that Morgan One set out very clearly what the law of the parent subsidiary control test is. And Morgan One cited an independent contractor case to Klein v. State of Wyoming. That is true, Your Honor. And so I'm sort of puzzled by why you're trying to suggest that independent contractor cases don't have any relevance here. I mean, both Morgan One and Laredo both reference independent contractor cases as being opposite in understanding what's going on here. Well, Judge, our view was that the independent contractor cases are analogous, and they can be instructive, but they're not the law in terms of, when we look at the test for parent subsidiary control, we look at page 624 of the Laredo decision. Laredo 619 says that it is, quote, essentially the same test. Yes, Your Honor. Unquote. Then we go to page 624, and the court there says, whether Solvay America, which is the parent, assumed an affirmative duty. So we're talking about the duty question, is not whether it operated any control in the mine, but whether Solvay America controlled the aspect of the mining operation that was involved in the incident that resulted in plaintiff's injuries to such a degree that it directed how that aspect should or should not be done. And that is the legal test. And that's the legal test set forth in Morgan I. In addition, we have the comment C portion of Section 414, which talks about the subsidiary must be entirely free to do the work in its own way. That's in the instruction. Well, I mean, as you've acknowledged, independent contractor cases are analogous, and they inform this discussion. So, I mean, what is it about those cases that you find problematic, that you feel the need to create space between them? The issue is in the plaintiff's proposed jury instruction, they talk about any control, anytime, anywhere. And that's what we object to. Let me ask this. Who wrote instruction number 11? The court independently or you? Was it one of your tendered instructions? The court drafted instruction 11, Your Honor, and both parties submitted their own versions. I think the court's instruction 11 is closer to ours, but it's not exact. Okay. Because the reason I ask is it just struck me that when we wrote the decision, the language is pretty clear. It says, you know, that the parent is going to be liable unless, and when it was written, it was written just the opposite. The parent will only be liable if. And kind of the structure is different, and I just wondered why. Given that one is the law of the case, why not just follow the law of the case? I didn't understand that. Well, Your Honor, we think Judge Skavdal did follow the law of the case. And he may have. I mean, it's a little hard to kind of see why it was written this way. It's been magic anyway, I guess. We tried to help out the court by showing you that color-coded page 15 of our brief so you could contrast and compare what was in the Morgan One decision versus what was in the instruction, and then you can weigh how that works. Thank you. And so we think the issue is clear. Again, the law in this circuit is that the instructions do not have to be flawless. I think is the term. But they have to set forth an accurate statement of the law. We think Jury Instruction 11 does that. In terms of the other issues raised by the. . . What about verdict? I mean, what do you say about his argument related to the verdict form and question number one? Well, to be candid, what I'm responding to is what he submitted to the court, which is the supplemental appendix at page 233. And that special verdict form question, in our view, does not accurately reflect Laredo because it references control over any part of the work. In our view, that's not the test. And so I think the Webb case, which is a 1998 case from this court, indicates that this court will review the special verdict form, again, with an abuse of discretion standard. And, you know, you are reading everything together, Judge Holmes. But we think the law is clear and that it was set forth accurately. If we flip the script, just hypothetically, and let's say that Judge Scavdall said, I'm not going to follow the language of Morgan 1, and I'm not going to follow Laredo. I'm going to craft a mirrored energy test. And, by the way, we put this in our briefing. The Wyoming civil jury pattern instruction in 2016 did put together a jury instruction for employer-independent contractor cases. And that's really what the appellants are basing their jury charge on in this case. But when you look at that instruction, it's very clear that the legal authority for that is a mirrored energy. The district court properly denied the judgment as a matter of law motion, just very quickly to touch on that point. In our view, the appellants did not make a Rule 50B motion post-trial. What does that mean? That means that they cannot now argue that the evidence was insufficient as a matter of law for the jury to find in our favor. And, secondly, on that issue, much like it was the first time around in Morgan 1, at the time that that motion was made, Baker Hughes got the benefit of all the evidence in his favor. And Rick Bowie testified during Plaintiff's Case-in-Chief on the control issue, and I think Judge Scavdall noted that in ruling in terms of denying that motion. In terms of the certification question, again, I think quickly, as my time is running down, this court is fully capable of analyzing state law in Wyoming. And the appellants did not move for certification until March 2019, well after the first trial, well after the second trial. I think it's noteworthy that the mirrored energy was decided in January 2016. That was during the pendency of the first case. The mirrored energy was briefed during the first appeal. When this court sent the case back for the second trial, plaintiffs did not avail themselves of asking Judge Scavdall to certify that question on mirrored energy. So the law in this circuit, I think, is clear that you cannot seek certification just because you receive an adverse result in the district court, which is what occurred here. Finally, on the judicial notice issue, Morgan One ruled on that issue. This was a letter by Mr. Emery to OSHA after the death of Mr. Morgan, and Morgan One ruled unequivocally that that was a privileged four-way communication. The appellants tried to resurrect that issue. We objected, obviously. And however you fall down on that issue, it was already ruled on in Morgan One. But number two, four witnesses testified to the very point that they're trying to make. There was no forklift policy specifically dealing with taking a liquid sample from a tote. Rick Bui testified, David Munzenmeier, Todd Schilt, and Rick James all testified under oath that they were not aware of any policy in place at that time. So are you saying in some sense, even if they had been able to admit the letter or the contents of the letter, it would just be redundant to testimony that was already in the record? That's right, Your Honor. Okay. That's right. That's all I have for the panel. Unless you have questions, I will submit. No questions, and we thank you for sitting the rest of your time. We're starting to run late here. Counsel, you have 20 seconds left or so. I hope to goodness I can do it, Your Honor. Let me talk quickly. The idea that I did not preserve the objection to question number one is ridiculous. I quoted from the opinion, and I said this is the correct formulation of the control question, and that gets back to the reason that this is so frustrating. To construct a jury charge in this case and to construct it correctly, you ask the question that I quoted directly from your opinion, and then you use the instruction that the Wyoming Supreme Court has approved as the correct statement of the law in Hoar. That avoids all this mess. It submits the control question correctly, and we should be done. But that's not where we wound up. Thank you, Counsel. Counsel are excused. The case is submitted.